MIDWHEY POWDER CO., INC., Cassel Garden
Farmers' Cooperative Cheese Company, and Hillside
Cooperative Cheese Manufacturing Association, Plain-
tiffs-Appellants,

v.

CLAYTON INDUSTRIES, and Roedel-Hanson &
Associates, Inc., Defendants-Respondents.

Court of Appeals

*No. 89-2105. Oral argument June 7, 1990.—Decided August 7,
1990.*

(Also reported in 460 N.W.2d 426.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *J. Ric Gass* and *Sharon S. Moyer* of *Kasdorf, Lewis & Swietlik, S.C.* and the oral argument of *J. Ric Gass* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *W. Stuart Parsons, Donald K. Schott* and *Erica M. Eisinger* of *Quarles & Brady* and the oral argument of *Erica M. Eisinger* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Midwhey Powder Co., Inc., appeals a summary judgment dismissing its complaint alleging negligence, strict liability and other claims against Clayton Industries and Roedel-Hanson & Associates, Inc., (collectively Clayton) the manufacturer and seller, respectively, of steam generators used as part of a system to generate electric power. Midwhey alleges that: (1) It is entitled to assert a tort claim against Clayton because the defect alleged in the steam generator caused damage to other component parts of the electrical generating system; (2) the trial court erred by granting summary judgment because the limited warranty granted by the manufacturer and seller was ineffective in restricting the remedies available to the ultimate consumer since the warranty was not disclosed until after the sale; (3) the

587

limited warranty was not effective because the ultimate consumer was not in privity with the manufacturer; and (4) the limited warranty was ineffective because it failed of its essential purpose when the manufacturer was unable to make suitable repairs. We conclude that Midwhey has no cause of action in tort because the existence of an effective warranty between the parties precludes tort liability. We further find that Midwhey's lack of notice with respect to warranty limitations at the time of the sale by Clayton to Edward and Lee does not operate to void these restrictions; and that there is sufficient privity between Clayton and Midwhey to sustain the warranty limitations. We conclude, however, that there remains a genuine issue of material fact as to whether Clayton's limited remedy of repair or replacement failed of its essential purpose, and so reverse the trial court's grant of summary judgment on this single issue.

This case arises from a decision by Midwhey Powder Co., Inc., Cassel Garden Farmers' Cooperative Cheese Company and Hillside Cooperative Cheese Manufacturing Association (collectively Midwhey) to install an on-site energy production system to reduce the substantial cost of energy used in its manufacturing process. Midwhey entered into a contract for the creation of the on-site energy production system with Edward and Lee Associates, Ltd., which represented to Midwhey that it could design a system resulting in a substantial savings of energy costs. Edward and Lee offered an express warranty on the energy production system as to workmanship and materials, consistent with the drawings and specifications agreed upon between the parties.

One of the energy production system's components was a steam generator manufactured by Clayton and sold to Edward and Lee by Roedel-Hanson and Associates, Inc. Roedel-Hanson specifically extended to Edward and

Lee the conditions and guarantees offered by Clayton.[1] The parties agree that Clayton's warranty was extended to the purchasers and end users of its equipment, including Midwhey.

Midwhey claims that the Clayton steam generators never operated properly. It alleges that the steam produced by the generators was of such poor quality that it could not be used in the energy saving system that had been constructed, that the excessive moisture in the steam damaged both the generators themselves and the turbines to which the generators were connected, that the generators vibrated badly and that the water pumps frequently failed. As a result of these defects the system did not work properly and the savings anticipated by the creation of the energy production system was never realized. Midwhey sued Edward and Lee and obtained a default judgment against it in the amount of $2,000,000, plus interest. Midwhey now seeks to recover from Clayton for the defects claimed in the steam generators.

---

[1]Clayton's warranty contained the following language:

Clayton warrants its equipment to be free from defects in material and/or workmanship for a period of 1 year from date of original installation, or 15 months from date of shipment from factory, or for the period as may be specified in a warranty attached to such equipment, whichever is shorter. THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXCEPT TITLE AND DESCRIPTION, WHETHER WRITTEN, ORAL OR IMPLIED, AND CLAYTON MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE.

. . ..

The repair or replacement of such defective part or parts by Clayton shall constitute the sole remedy of purchaser and sole liability of Clayton whether on warranty, contract or negligence and that Clayton shall not be liable for any other expense, injury, loss or damage, whether direct, incidental or consequential.

We review the granting of summary judgment using the same methodology applied by the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We first examine the complaint to determine whether a cause of action is stated and, if so, whether the record demonstrates genuine issues of material fact that would defeat the moving party's application for summary judgment.

The general rule in Wisconsin is that tort remedies involving claims of economic damages only are not available to a purchaser in a commercial setting where an effective warranty exists between the parties. *Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.,* 148 Wis. 2d 910, 921, 437 N.W.2d 213, 217-18 (1989). Here, Clayton provided a warranty on its steam generator that restricted the remedies to repair and replacement. Midwhey is attempting to avoid the application of the restrictions provided by the warranty on a number of theories.

Midwhey first claims that it is able to assert a claim in tort against Clayton by virtue of the damage caused to the turbines that were attached to the generators as part of the energy system. Relying on *Tony Spychalla Farms, Inc. v. Hopkins Agric. Chem. Co.,* 151 Wis. 2d 431, 439-40, 444 N.W.2d 743, 748 (Ct. App. 1989), Midwhey claims that the damage done to the turbines is damage to "other property," authorizing a tort claim for economic loss as a result of the defects in the steam generators. We do not agree.

The turbines were connected to the steam generators as an integral part of a total energy saving system. While a steam generator and a turbine may in other

circumstances be sufficiently functionally distinct to be regarded as separate property, under the facts of this case when each is a component of a single system integrally connected to one another as part of an overall apparatus designed to produce electricity, the turbines cease to be separate property. *See East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858 (1986); *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.*, 645 F. Supp. 1129 (W.D. Wis. 1986), *aff'd,* 830 F.2d 1405 (7th Cir. 1987). Because the relationship of the Clayton generator to the other components of the Edward and Lee-designed system is undisputed, summary judgment is appropriate. *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 562–63, 297 N.W.2d 500, 504–05 (1980). We conclude as a matter of law that because of the integral relationship between these two pieces of machinery, component parts of a single system, the turbines are not "other property," and, therefore, damage to the turbine does not permit a tort claim against the manufacturer of the generator.

Midwhey next argues that Clayton's limitation on remedies available to the ultimate consumer is ineffective because the warranty was not presented to Midwhey until after Edward and Lee's purchase of the steam generators had been completed. Relying on *Taterka v. Ford Motor Co.*, 86 Wis. 2d 140, 271 N.W.2d 653 (1978), Midwhey claims that the attempt to limit remedies by a warranty issued after the purchase is ineffective. Such an argument misapplies the holding of *Taterka.*

In this case, the warranty was made by Clayton and extended both to Edward and Lee and to Midwhey, the ultimate user. Edward and Lee was fully advised of the warranty's terms and conditions at the time it negotiated for the purchase of the Clayton steam generators.

Edward and Lee extended a broader and less restrictive warranty to Midwhey. Clayton did not. The Clayton warranty was fully disclosed to Edward and Lee at the time the purchase of the steam generators was negotiated, and Edward and Lee and Midwhey specifically agreed that the Clayton warranty would be extended to Midwhey. The extension of this warranty by Clayton to Midwhey and its acceptance by Midwhey created an effective warranty between Clayton and Midwhey. *See Sunnyslope,* 148 Wis. 2d at 915, 437 N.W.2d at 215. In addition, it is undisputed that Clayton attempted repairs on the generators. Just as in *Sunnyslope,* Midwhey's acceptance of these repair attempts evidenced the validity of the warranty. *See id.*

Midwhey's third argument asserts that the warranty is ineffective in restricting the remedies available to it because Midwhey has never been in privity with Clayton, and, therefore, Midwhey is not subject to the limitations contained in the warranty. Such an argument was implicitly rejected by our supreme court in *Sunnyslope,* 148 Wis. 2d at 910, 437 N.W.2d at 213. The *Sunnyslope* court held that because the ultimate purchaser of a backhoe and its manufacturer were parties to an enforceable warranty, they were in privity. *Id.* at 915, 437 N.W.2d at 215. Sunnyslope Grading had purchased the backhoe in question through a dealer, and yet the court found that the manufacturer and the ultimate consumer were in sufficient "privity" to enforce the terms of the warranty. *Id.* If the relationship is sufficient for the purchaser to enforce the warranty, it is sufficient to restrict the remedies set forth as part of the warranty.

Finally, Midwhey argues that the warranty fails to successfully limit the remedies available to it because the remedy of repair or replacement provided in the contract

592

failed of its essential purpose. *See* sec. 402.719(2), Stats. Midwhey contends that Clayton failed to adequately repair the defects in the steam generator as provided in its warranty. Midwhey's argument that Clayton's failure to adequately repair the steam generators means its warranty failed of its essential purpose is based upon *Phillips Petroleum Co. v. Bucyrus-Erie Co.,* 131 Wis. 2d 21, 388 N.W.2d 584 (1986) and *Murray v. Holiday Rambler, Inc.,* 83 Wis. 2d 406, 265 N.W.2d 513 (1978).

Midwhey contends that Clayton failed to adequately repair the generators despite several attempts and every reasonable opportunity to do so. Because Clayton denies that it failed to effect repairs, this is a fact in dispute which, if material, would preclude the granting of summary judgment. Section 802.08(2), Stats. In *Murray,* the failure to replace or repair the defects in a motor vehicle as provided for in the warranty was determined to be a basis upon which the restricted remedies created by the warranty could be set aside. The *Murray* court reasoned that the warranty failed of its essential purpose under sec. 402.719(2), Stats., when the manufacturer failed or refused to effect repairs. That court stated: "Where the seller is given reasonable opportunity to correct the defect or defects, and the vehicle nonetheless fails to operate as should a new vehicle free of defects, the limited remedy fails of its essential purpose." *Id.* at 421, 265 N.W.2d at 521 (citations omitted).

Therefore, if Clayton failed or refused to effect repairs as required by the terms of the warranty extended to Midwhey, the warranty could be found to have failed of its essential purpose and recovery of damages as determined by the UCC or required by equity could be available to Midwhey. Section 402.719(2), Stats.; *see also Polycon Indus., Inc. v. Hercules, Inc.,* 471

F. Supp. 1316 (E.D. Wis. 1979). Such a determination does not authorize tort causes of action against Clayton. *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir. 1990). It does, however, create a cause of action that could sustain a claim for damages as provided by the UCC. *Murray; see also* 67 Am. Jur. 2d *Sales* secs. 1247–51 (1985). The dispute as to whether Clayton effected repairs as required by the warranty is therefore material in determining whether the warranty failed of its essential purpose. Because there is a dispute as to material fact, the court erred by granting summary judgment on this issue.

*By the Court.*—Judgment affirmed in part and reversed in part.