Alden K. MOSE and Woods Corporate Center, L.L.C.,
Plaintiffs-Appellants,

v.

TEDCO EQUITIES — POTTER ROAD LIMITED PARTNERSHIP,
Tedco Equities — Mayfair Road Limited Partnership,
Empire Level Mfg. Corp., The Aetna Casualty and
Surety Company, Firemen's Insurance Company of
Newark, New Jersey and The Standard Fire
Insurance Company, ABC Insurance Co., STS Con-
sultants, Ltd. and Thomas W. Wolf, Defendants-
Respondents,

TICOR TITLE INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 97–1586. Submitted on briefs February 2, 1999.—Decided
June 22, 1999.*

(Also reported in 598 N.W.2d 594.)

848

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas N. Harrington, Pamela H. Schaefer* and *Patrick G. McBride* of *Cook & Franke S.C.* of Milwaukee.

On behalf of the defendant-respondent Empire Level Mfg. Corp., the cause was submitted on the joint briefs of *Thomas Armstrong* of *Quarles & Brady* of Milwaukee and *Ross R. Kinney* of Waukesha; on behalf of defendant-respondent Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company and The Standard Fire Insurance Company by *Thomas R. Schrimpf* of *Hinshaw & Culbertson* of Milwaukee; and on behalf of defendant-respondent Fireman's Insurance Company of Newark, New Jersey by *Dorothy H. Dey* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J. Alden K. Mose and Woods Corporate Center, L.L.C. (Mose) appeal from a non-final order dismissing tort claims filed against Empire Level Mfg. Corp. and its insurers.[1] Mose claims the

---

[1] Empire cross-appealed from the same order but, while this appeal was pending, a settlement was reached and the cross-appeal was withdrawn. Accordingly, we do not address it. The parties dispute whether the settlement also rendered the appeal moot. Because Mose's appeal raises claims against other parties, and for clarification of the law, we decide the appeal.

trial court erred in dismissing his tort claims against Empire because the claims are not barred by the economic loss doctrine and because dismissal unconstitutionally denies him a remedy for wrongs he suffered as a result of Empire's actions.

Because the economic loss doctrine bars Mose's tort claims against Empire, we affirm the trial court's order granting dismissal of those claims. Further, we are not persuaded that dismissal of these claims unconstitutionally prevents Mose from seeking a remedy for any wrongs he has suffered.

## I. BACKGROUND

From approximately 1949 to 1986, Empire manufactured levels and other measuring devices on property it leased at 10950 West Potter Road in Wauwatosa. The property was owned by E.L.M. Corporation, which is an entity separate and distinct from Empire.[2] In its manufacturing operations, Empire used paints, thinners, solvents and degreasers, which contained volatile organic compounds now classified as hazardous substances. The substances were deposited in a gravel-lined pit on the West Potter Road property. In May 1986, Tedco Equities — Potter Road Limited Partnership purchased the Potter Road property from E.L.M. Prior to this time, Empire had moved its operations to another facility.

In 1989, Tedco decided to sell the Potter Road property and retained an environmental consultant, STS Consultants, Ltd., to perform an environmental assessment of the property. By report dated September 15, 1989, STS concluded that the soil and groundwater were contaminated by hazardous substances.

---

[2] E.L.M. Corporation was dissolved in 1987.

Mose, who was interested in purchasing the property as a business investment, reviewed the STS report. Several days later, on September 27, 1989, Mose entered into a purchase agreement with Tedco. Mose agreed to pay $3,050,000 for the property and Tedco agreed to remediate the contamination. Mose and Tedco agreed to escrow $215,000 from the purchase price to pay for remediation costs. Tedco failed to clean up the property. Instead, Tedco sued Empire in federal court seeking declaratory relief and damages relating to the environmental contamination at the Potter Road site. Tedco and Empire entered into a Settlement Agreement as a result of this lawsuit, whereby Empire agreed to clean up the property.

In June 1995, Mose and Woods Corporate Center commenced this action against Tedco, Empire, their insurers and others.[3] As pertinent to this appeal, the complaint alleges five causes of action based on tort against Empire: strict liability, nuisance, trespass, waste and negligence. With respect to damages suffered, the complaint states:

> As a result of the environmental contamination at the Facility, [the property] failed to produce the rents necessary to maintain the integrity and profitability of the Facility. As a result, certain tenants and potential tenants were lost, leading to a reduction in cash flow and difficulty on the part of Mose in meeting loan payments.

Mose also alleges that he has been damaged because of a reduced market value of the facility and that "[d]amage includes harm to the property itself as well as property outside of the subject of the suit between

[3] In July 1994, Mose sold the property to Woods. Mose owns a 50% interest in Woods.

Mose and defendants, i.e., adjoining property owned by third parties, as well as the groundwater."

Empire filed a motion to dismiss the tort causes of actions alleged in the complaint on the basis that each was barred by the economic loss doctrine and none stated a viable cause of action. The trial court granted the motion. We granted Mose's petition to appeal from the non-final order memorializing the trial court's decision.

## II. DISCUSSION

This case involves the application of the economic loss doctrine. The doctrine and why it exists was summarized in *Budgetel Inns, Inc. v. Micros Systems, Inc.*, 8 F. Supp. 2d 1137 (E.D. Wis. 1998):

> The economic loss doctrine is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer under tort theories.damages that are solely economic losses.

*Id.* at 1141 (internal quotation marks omitted).

> Economic loss is defined generally as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold. Economic loss encompasses direct economic loss, based upon the difference in value between what was received as compared to what was represented, together with costs of replacement and repair. It also includes consequential, or indirect, economic losses attributable to the product defect, such as lost profits resulting from the inability to make use of the product.
>
> . . . .

. . . [T]he basic theory of the doctrine is straightforward:

> Commercial entities are capable of bargaining to allocate the risk of loss inherent in any commercial transaction. Courts should assume that parties factor risk allocation into their agreements and that the absence of comprehensive warranties is reflected in the price paid. Permitting parties to sue in tort when the deal goes awry rewrites the agreement by allowing a party to recoup a benefit that was not part of the bargain.

*Id.* at 1140–41 (citations and internal quotation marks omitted).[4] With this background set forth, we now address the merits of the appeal.

Mose argues that the economic loss doctrine does not apply to his tort claims against Empire because: (1) the public policies announced in *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 573 N.W.2d 842 (1998), which extended the application of the economic loss doctrine, even in the absence of privity, do not apply; (2) his complaint alleged damage to *other* property; and (3) this case involves *real property* rather than a defective product. We reject each in turn.

> [T]o determine if a complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to a motion under sec. 802.06(2)(f), Stats., the facts pled are taken as admitted. No inference can be reached in respect to

---

[4] *See generally General Casualty Co. v. Ford Motor Co.*, 225 Wis. 2d 353, 592 N.W.2d 198 (1999); *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 592 N.W.2d 201 (1999) (discussing economic loss doctrine).

> the ultim[a]te facts alleged until resolved by judge or jury. The purpose of the motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. Since pleadings are to be liberally construed, a claim will be dismissed only if it is quite clear that under no conditions can the plaintiff recover.

*Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985) (citations and internal quotation marks omitted). In reviewing a § 802.06(2)(f), STATS. motion, we accept the alleged facts as being true and decide any legal issues without deference to the trial court. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979).

In *Daanen*, our supreme court decided that the economic loss doctrine applies to bar tort claims seeking solely economic losses even when the purchaser was not in privity of contract with the defendant. *See id.*, 216 Wis. 2d at 400, 573 N.W.2d at 844. Mose contends that this holding does not control his case because the public policies underlying the decision are inapplicable to his case. We do not agree and conclude that *Daanen* controls.

The public policies announced in *Daanen*, which supported our supreme court's decision to apply the economic loss doctrine in non-privity cases, include: (1) maintaining the fundamental distinction between tort law and contract law; (2) protecting commercial parties' freedom to allocate economic risk by contract; and (3) encouraging the party best situated to assess the risk of economic loss, the commercial purchaser, to assume, allocate, or insure against that risk. *See id.* at 403–04, 573 N.W.2d at 846.

Mose argues that the public policies relied on in *Daanen* are not applicable here because he did not contract with Empire and never had an opportunity to allocate the economic risk by contract. His argument is unpersuasive. In essence, he is contending that his lack of privity with Empire prevents application of the economic loss doctrine. That issue was conclusively decided in *Daanen*. Our supreme court held that the economic loss doctrine applies even in non-privity cases. *See id.* at 400, 573 N.W.2d at 844. Moreover, Mose knowingly assumed the risk of the economic damages when he entered into the commercial transaction, and obtained various representations and warranties from Tedco. Thus, Mose had the opportunity to bargain for allocation of the risk. He negotiated a reduction in the purchase price and secured Tedco's agreement to clean up the contamination. Under these circumstances, we conclude that Mose's attempt to distinguish *Daanen* is without merit. To allow Mose to proceed on tort claims against Empire would be in direct conflict with what our supreme court decided in *Daanen*:

> [A]llowing remote commercial purchasers to recover in tort for what is a commercial contract claim would perversely encourage those purchasers to bargain for no warranty or insurance in exchange for a reduced purchase price because they could rely on tort remedies as their "warranty." Withdrawing application of the economic loss doctrine in this situation would encourage a remote commercial purchaser, who had been willing to assume the full risk of economic loss, to purchase the goods "as is" in exchange for a lower price; to roll the dice and hope the product does not fail; and to reap initially the

financial benefit of a low purchase price. If the product does fail down the road, the commercial purchaser could still reach all the way back through intervening transactions, contracts, and warranties to sue the original manufacturer in tort. This would grant a commercial purchaser more than the benefit of the bargain to which it and the seller . . . agreed and on which the purchase price was negotiated and paid.

*Id.* at 408–09, 573 N.W.2d at 848 (citations omitted). Mose purchased the property knowing that it was contaminated. He took the risk. He negotiated a compromised purchase price as a result. He cannot now expect to circumvent the contract to sue the original owner/occupier for a tort recovery for his economic losses.

■ Mose next claims the economic loss doctrine does not bar his tort claims against Empire because he alleged in his complaint that property *other* than the property itself was damaged. Specifically, he contends that the groundwater was contaminated by Empire's actions.[5] This allegation is insufficient to preclude application of the economic loss doctrine.

---

[5] Mose also contends that the property of adjoining landowners was damaged, and that this satisfies the "other property damage" requirement and operates to preclude application of the economic loss doctrine. We are not persuaded. Under the economic loss doctrine, in order to maintain a cause of action in tort, a plaintiff must have sustained an injury to *his or her* person or *his or her* other property as a result of purchasing the allegedly defective property. *See Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 923, 929, 471 N.W.2d 179, 180, 183 (1991). Mose's allegations regarding damage to adjoining property do not satisfy this standard.

Although we agree that groundwater contamination from chemical spills constitutes "property damage," *see Maryland Cas. Co. v. Wausau Chem. Corp.*, 809 F. Supp. 680, 692–93 (W.D. Wis. 1992), we cannot conclude that this damage constitutes *other* property damage. In *Midwhey Powder Co., Inc. v. Clayton Industries*, 157 Wis. 2d 585, 460 N.W.2d 426 (Ct. App. 1990), we applied an "integral system/relationship" test to determine what constitutes *other* property. *See id.* at 591, 460 N.W.2d at 429. In *Midwhey*, the plaintiffs purchased steam generators manufactured by the defendant and the generators failed. *See id.* at 589–90, 460 N.W.2d at 428–29. The plaintiffs alleged that other property was damaged, precluding application of the economic loss doctrine because turbines attached to steam generators were damaged when the generators failed. *See id.* We concluded that "because of the integral relationship between these two pieces of machinery, component parts of a single system, the turbines are not 'other property,' and, therefore, damage to the turbine does not permit a tort claim against the manufacturer of the generator." *Id.* at 591, 460 N.W.2d at 429.

Applying the "integral system/relationship" test to the facts here, we conclude that the groundwater was a part of the real estate purchased. It cannot be separated out from the property itself and, therefore, cannot constitute *other* property. Therefore, we reject Mose's contention to the contrary.

Mose also claims that the economic loss doctrine does not apply here because his case involves real property, rather than a defective product, which is usually the subject matter at issue when the economic loss doctrine is involved. We reject his claim. Although this

858

issue has not been directly addressed by our supreme court, federal courts in Wisconsin have discerned no reason to make the distinction that Mose suggests. *See Metal Processing Co., Inc. v. Amoco Oil Co.*, 926 F. Supp. 828, 832–33 (E.D. Wis. 1996) (case is not distinguishable from others applying the economic loss doctrine "merely because the 'product' in this case is land as opposed to a piece of equipment or a building."); *see also Raytheon Co. v. McGraw-Edison Co., Inc.*, 979 F. Supp. 858, 866–70 (E.D. Wis. 1997). We agree and adopt this analysis. We have not been provided with, nor can we discern, any reason to forego application of the economic loss doctrine simply because the "product" is real estate.

█

Finally, Mose contends his constitutional right to a remedy was violated when the trial court dismissed his tort claims against Empire. We do not agree. Mose is not left without a remedy as a result of the dismissal of the tort claims. Besides suing Tedco and others in tort as a result of the alleged contamination of the Potter Road property, Mose has sued the seller, Tedco, for breach of contract. If Mose can prove the breach of contract allegations, he will be afforded proper legal redress.

*By the Court.*—Order affirmed.