The BAY BREEZE CONDOMINIUM ASSOCIATION, INC.,
Plaintiff-Appellant,

v.

NORCO WINDOWS, INC. and JC Development Corporation, Defendants-Third-Party Plaintiffs,

MORGAN-WIGHTMAN SUPPLY Co., Barker Lumber Company, American Family Mutual, Wausau Underwriters Insurance Company, The Twin City Fire Insurance, John Ingersoll and Colette Giefer, Defendants,

JELD-WEN, INC., Defendant-Respondent,

v.

TERRA II CONSTRUCTION, INC., Kazmierski Builders & Remodelers, David P. Kaminski, Douglas A. Gallus, Dennis Schiller and Timothy Schiller, d/b/a Outsiders a/k/a Great Plains, and Steve Elkin and Gary Elkin d/b/a H.I.P., Third-Party Defendants.

Court of Appeals

*No. 01–2689. Submitted on briefs June 7, 2002.—Decided July 31, 2002.*

2002 WI App 205

(Also reported in 651 N.W.2d 738.)

512

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven J. Slawinski* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

On behalf of the defendant-respondent Jeld-Wen, Inc., the cause was submitted on the brief of *Kevin P. Whaley* of *Foley & Lardner* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. The Bay Breeze Condominium Association, Inc. (the Association) appeals from a summary judgment granted in favor of Jeld-Wen, Inc.

The Association filed this action against Jeld-Wen alleging that windows installed in certain condominium units were negligently designed and manufactured by Jeld-Wen, resulting in water damage inside and outside the units and between the interior and exterior walls. The Association maintained that the damage to the area surrounding the windows fell under the "other property" exception to the economic loss doctrine and, therefore, brought its action in tort, raising claims of strict products liability and negligence. The circuit court dismissed the Association's tort claims based on its determination that the claims are barred by the economic loss doctrine. The court found that the windows are part of an integrated structure such that the "other property" exception does not apply.

¶ 2. We affirm the circuit court's grant of summary judgment in favor of Jeld-Wen. We conclude that the damage caused to portions of the condominium units adjoining the defective windows does not fall within the "other property" exception to the economic loss doctrine.

### FACTS

¶ 3. Bay Breeze is a luxury condominium complex located in Muskego, Wisconsin. It is comprised of sixteen buildings that are divided into seventy-four units. The buildings were constructed by JC Development Corporation in phases between 1989 and 1998. All of the windows installed at Bay Breeze were Norco brand windows. Those windows installed prior to July 1996 were designed and manufactured by Norco Windows, Inc. In July 1996, Jeld-Wen purchased the assets of Norco Windows, Inc., including the Norco brand name, and continued manufacturing and selling windows using the Norco brand name.

¶ 4. According to Jeld-Wen, its windows were used in only four units of the Bay Breeze condominium development. With these windows, Jeld-Wen provided to the original purchasers a two-year warranty for the "wood components, hardware, weather stripping, insect screens, and glazing beads that accompany its products ("components")" and further stating that these items were "free of defect that might unreasonably affect the product's normal functioning." Pursuant to the warranty, Jeld-Wen "will either provide replacement parts to the place of the product installation or repair any non-conforming components at its discretion."

¶ 5. On October 30, 1998, the Association filed this action against Norco Windows, Inc., and JC Development Corporation. Jeld-Wen was not named as a defendant until the Association filed its second amended complaint on November 17, 2000.[1] The complaint alleged that by 1997, the Association discovered that it was experiencing an inordinate amount of problems related to the windows installed in the condominium units. These problems included leakage of water into the units and into the walls of the buildings at or around the windows; excessive peeling of paint on the exterior wooden window casements and frames and on the exterior of the buildings around or near the windows; rotting and deterioration of wood window casements and frames and of certain portions of the building; and water damage to the interior of the condominium units and structural components of the walls of certain buildings as a result of water leakage at or near the windows.

---

[1] The second amended complaint named nineteen additional defendants, none of whom is a party to this appeal.

¶ 6. As to Jeld-Wen, the Association alleged strict products liability, negligence and breach of warranty. Jeld-Wen denied the Association's allegations and raised affirmative defenses, including a defense that the Association's claims were barred by the economic loss doctrine and by the terms of Jeld-Wen's express warranty. Jeld-Wen followed with a motion for summary judgment, which the circuit court granted.[2] The circuit court determined that the Association's claims brought in tort were barred under the economic loss doctrine.

¶ 7. The Association appeals.

## *DISCUSSION*

### *Standard of Review*

¶ 8. When reviewing a grant of summary judgment, we apply de novo the standards set forth in WIS. STAT. § 802.08 (1999–2000).[3] *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). Pursuant to § 802.08(2), summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[2] In addition to asserting the economic loss doctrine, Jeld-Wen's summary judgment motion also challenged the Association's lack of standing and maintained that the breach of warranty claim was prohibited by its express warranty. The circuit court did not reach the issue of standing and the Association withdrew its breach of warranty claim at the summary judgment hearing on August 31, 2001. Thus, neither issue is before this court.

[3] All references to the Wisconsin Statutes are to the 1999–2000 version.

## *Economic Loss Doctrine*

■■■■■

¶ 9. The economic loss doctrine is a judicially created doctrine under which a purchaser of a product cannot recover from a manufacturer on a tort theory for damages that are solely economic. *Kailin v. Armstrong*, 2002 WI App 70, ¶ 27, 252 Wis. 2d 676, 643 N.W.2d 132. It is based on an understanding that contract law, and particularly the law of warranty, is better suited than tort law for dealing with purely economic loss in the commercial arena. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403–04, 573 N.W.2d 842 (1998). Therefore, when contractual expectations are frustrated because of a defect in the subject matter of the contract and the only damages are economic losses, the exclusive remedy lies in contract. *Kailin*, 2002 WI App 70 at ¶ 27.

■■

¶ 10. The policies underlying the economic loss doctrine are: (1) to protect the parties' freedom to allocate economic risk by contract; (2) to encourage the party best situated to assess the risk of economic loss—the purchaser—to assume, allocate, or insure against that risk; and (3) to maintain the fundamental distinction between tort law and contract law. *Id.*

¶ 11. In protecting the distinction between tort and contract law, the economic loss doctrine recognizes:

> In contract law, the parties' duties arise from the terms of their particular agreement; the goal is to hold parties to that agreement so that each receives the benefit of his or her bargain. The aim of tort law, in contrast, is to protect people from misfortunes which are unexpected and overwhelming. The law imposes tort duties upon manufacturers to protect society's interest in safety

from the physical harm or personal injury which may result from defective products. Thus, where a product fails in its intended use and injures only itself, thereby causing only economic damages to the purchaser, "the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."

*Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 247–48, 593 N.W.2d 445 (1999) (citations omitted).

¶ 12. In protecting the freedom to contract, commercial parties may set the terms of their own agreement, including warranties, disclaimers and limitation of remedies and a manufacturer may negotiate with its distributors and purchasers to disclaim or limit its liability for economic losses. *Daanen*, 216 Wis. 2d at 407–08. This contractual allocation of risk allows purchasers to buy the product at a lower price and in some situations may be the only way to encourage manufacturers to produce certain products. *Id.* at 408. Therefore, as a matter of policy, when commercial parties have allocated their respective risks through contract, the economic loss doctrine instructs that it is more appropriate to enforce that bargain than to allow an "end run" around that bargain through tort law. *Id.* at 407.

¶ 13. The economic loss doctrine does not apply, however, if the damage is to property other than the defective product itself; in that case, a complainant may pursue an action in tort. *Wausau Tile*, 226 Wis. 2d at 247. "Similarly, claims which allege economic loss in combination with non-economic loss are not barred by the doctrine. 'In short, economic loss is damage to a product itself or monetary loss caused by the defective

product, which does not cause personal injury or damage to other property.' " *Id*. (citation omitted).

### *Application of the "Other Property" Exception*

¶ 14. The Association argues that the circuit court erred in granting Jeld-Wen's motion for summary judgment based on its finding that the "other property" exception did not apply to the Association's claim for damage caused to the defective windows or damage caused to the walls adjoining those windows.

¶ 15. Whether Jeld-Wen is entitled to summary judgment as a matter of law turns upon the application of the economic loss doctrine's "other property" exception. As stated above, that exception precludes the application of the economic loss doctrine when a product purchaser is claiming personal injury or damage to property other than to the product itself. *Id*. The circuit court determined that the Association's tort claims were barred by the economic loss doctrine because the windows were part of an "integrated system" precluding the application of the "other property" exception. While the Wisconsin appellate courts have discussed the integrated systems approach to the "other property" exception, no case as yet has addressed this doctrine in a building defect case.

¶ 16. The "integrated systems" limitation of the "other property" exception was discussed at length by our supreme court in *Wausau Tile*. In that case, Wausau Tile manufactured concrete paving blocks made of cement, aggregate, water and other materials for use primarily on exterior sidewalks. *Id*. at 241. Wausau Tile sued the company it contracted to supply the cement for its paving blocks, alleging that high levels of alkalinity

in the cement caused problems with the paving blocks, such as excessive expansion and cracking. *Id.* at 242. The circuit court dismissed Wausau Tile's negligence and strict liability claims as barred by the economic loss doctrine. *Id.* at 244. Wausau Tile argued on appeal that the cost of repairing and replacing the paving blocks did not constitute economic loss because the paving blocks themselves were "property other than the defective product [the cement]." *Id.* at 249.

¶ 17. The supreme court rejected Wausau Tile's argument, holding that "[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property' which precludes the application of the economic loss doctrine." *Id.* The court observed:

> A product that fails to function and causes harm to surrounding property has clearly caused harm to other property. However, when a component part of a machine or a system destroys the rest of the machine or system, the characterization process becomes more difficult. *When the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself. When so characterized, the damage is excluded from the coverage of [the Restatement of Torts].* A contrary holding would require a finding of property damage in virtually every case in which a product harms itself and would prevent contractual rules from serving their legitimate function in governing commercial transactions.

*Id.* at 249–50 (citing RESTATEMENT (THIRD) OF TORTS § 21 cmt. e (1997)). The supreme court held that the paving blocks were "integrated systems comprised of several component materials, including . . . cement." *Id.* at 251.

¶ 18. Two earlier Wisconsin cases similarly dismissed tort claims based on the economic loss doctrine

521

using an integrated system analysis. In *Midwhey Powder Co., v. Clayton Industries*, 157 Wis. 2d 585, 460 N.W.2d 426 (Ct. App. 1990), Midwhey filed an action against Clayton alleging that Clayton's steam generators never operated properly thereby preventing the generators from being used as intended in Midwhey's on-site energy production system. *Id.* at 588–89. Midwhey claimed that the generators produced steam with excessive moisture resulting in damage to the generators and to the turbines to which they connected, the generators vibrated badly and the water pumps frequently failed. *Id.* at 589.

¶ 19. The supreme court rejected Midwhey's claim that it could pursue an action in tort because the damage caused to the turbines that were attached to the generators constituted damage to "other property." *Id.* at 590–91. While acknowledging that under different circumstances a generator and turbine may be regarded as separate property, the supreme court noted that in this case the turbines connected to the steam generators as an integral part of a total energy saving system. *Id.* When "each is a component of a single system integrally connected to one another as part of an overall apparatus designed to produce electricity, the turbines cease to be separate property." *Id.* at 591. The court held as a matter of law that "because of the integral relationship between these two pieces of machinery, component parts of a single system, the turbines are not 'other property' . . . ." *Id.*

¶ 20. Likewise, in *Cincinnati Insurance Co. v. AM International, Inc.*, 224 Wis. 2d 456, 591 N.W.2d 869 (Ct. App. 1999), this court rejected the plaintiff's argument that damage to a printing press as a result of a defective gear constituted "damage to other property." *Id.* at 463. Relying on *Midwhey*, we held that under the "integral

system" test, the gear was a component part of the press, having "no function apart from the machine for which it was manufactured." *Cincinnati Ins.*, 224 Wis. 2d at 463.

¶ 21. While acknowledging our holding in *Cincinnati Insurance*, the Association contends that Wisconsin law does not support the application of the "integrated system" test to building constructions. In support, it relies on *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis. 2d 38, 240 N.W.2d 124 (1976). There, the plaintiff sought recovery for damage to other property and to the product itself based on strict liability in tort. *Id.* at 43–44. Specifically, the plaintiff sought damages for the cost of replacing a leaking roof and repainting eaves damaged as a result of the roof. *Id.* In addressing the issue on appeal, the supreme court noted, "In the case at bar the damages to the product itself (the roof) are associated with damages to other property (the eaves)." *Id.* at 44.

¶ 22. Based on this statement, the Association contends that Wisconsin law "does not view a building or any portion of a building as an integrated system . . . ." We are unpersuaded for two reasons. First, the Association's reliance on *City of LaCrosse* is misplaced because the case was initially limited by the supreme court's adoption of the economic loss doctrine in *Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 917, 437 N.W.2d 213 (1989), and later expressly overruled by the supreme court in *Daanen*.[4] Second, recent Wisconsin case law addressing the economic loss doctrine indicates an

---

[4] While conceding that *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.*, 72 Wis. 2d 38, 240 N.W.2d 124 (1976), was decided prior to the supreme court's adoption of the economic loss doctrine in *Sunnyslope Grading, Inc. v. Miller*,

application of the integrated systems test to varying products under varying circumstances. *See, e.g., Cincinnati Ins.*, 224 Wis. 2d at 463 (applying the integral systems test to the gear of a printing press); *Midwhey*, 157 Wis. 2d at 590–91 (applying the integral systems test to the generator in an energy producing system); *Mose v. Tedco Equities*, 228 Wis. 2d 848, 857–58, 598 N.W.2d 594 (Ct. App. 1999) (applying the integral system test to the groundwater of a parcel of land).

¶ 23. Although to date Wisconsin courts have not specifically addressed whether the integrated systems approach applies to building construction, other jurisdictions have addressed this precise issue.[5] One case in particular, *Casa Clara Condominium Ass'n, Inc. v.*

*Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 437 N.W.2d 213 (1989), the Association argues that the holding of *LaCrosse* has never been reversed or overruled. The Association is wrong. While the supreme court discussed the *City of LaCrosse* holding in *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 415–17, 573 N.W.2d 842 (1998), and overruled any dicta in *City of LaCrosse* that conflicted with its holding in that case, the supreme court later clarified the status of *City of LaCrosse* in *State Farm Mutual Insurance Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 340, 592 N.W.2d 201 (1999). There the supreme court rejected the plaintiff's reliance on *City of LaCrosse*, noting that "*LaCrosse* was first limited by this court in *Sunnyslope*, 148 Wis. 2d at 917, in 1989, and then expressly overruled in 1998 in *Daanen*, 216 Wis. 2d at 416." *State Farm*, 225 Wis. 2d at 340. In light of this statement, made by the very court that decided *LaCrosse, Sunnyslope* and *Daanen*, we believe it to be clear that *City of LaCrosse* is no longer good law.

[5] The Association cites to *Jacob v. Russo Builders*, 224 Wis. 2d 436, 592 N.W.2d 271 (Ct. App. 1999), and *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 471 N.W.2d 179 (1991), in support of its contention that Wisconsin law has previously addressed and rejected the integrated systems test in the context of building defect cases. We are unpersuaded. The facts

*Charley Toppino and Sons, Inc.*, 620 So. 2d 1244 (Fla. 1993), provides guidance on this issue and was cited to

and circumstances of *Jacob* and *Northridge* render them inapposite to the case at bar.

*Jacob* is an insurance case involving the interpretation of a business risk exclusion in a general liability policy. *Jacob*, 224 Wis. 2d at 440. The *Jacob* court expressly rejected reliance on cases involving the economic loss doctrine as they did not involve an insurance coverage issue and did not assist the court in determining how a reasonable insured would understand the insurance policy language at issue in that case. Here, we similarly reject the Association's reliance on an insurance coverage case in determining the application of the "integral system" test to a building defect case.

*Northridge* is likewise inapplicable in this case. *Northridge* involved a claim based on the defendant's sale of fireproofing material containing asbestos. The plaintiffs argued that the fireproofing material contaminated their buildings and resulted in damages. *Northridge*, 162 Wis. 2d at 922. The circuit court determined that the plaintiffs' claims did not result from damage to other property and, therefore, were barred by the economic loss doctrine. *Id.* at 922–23. The supreme court reversed, holding that the complaint alleged damage to other property caused by the contamination of the plaintiffs' buildings with asbestos from the defendant's product, posing a health hazard. *Id.* at 923. The supreme court clarified its holding in *Northridge* in a later case, *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 263–64, 593 N.W.2d 445 (1999). There, the court instructed that *Northridge* is not applicable when, as here, the plaintiff is alleging that the product is of inferior quality. *Wausau Tile*, 226 Wis. 2d at 261. Further, the court indicated that it developed the *Northridge* rule "in response to the unique facts of that case" as it involved a defective product containing an inherently dangerous material. *Wausau Tile*, 226 Wis. 2d at 261. The "public safety exception" to the economic loss doctrine created by the court in *Northridge* was designed "to address special public safety concerns present in claims involving contamination by inherently hazardous substances like asbestos." *Wausau Tile*, 226 Wis. 2d at 264. Because this

by our supreme court in applying the integrated systems approach in *Wausau Tile*.

¶ 24. The plaintiffs in *Casa Clara* owned condominium units and single-family homes built with, and allegedly damaged by, concrete supplied by Toppino. *Casa Clara*, 620 So. 2d at 1245. The concrete contained a high salt content causing the reinforcing steel inserted in the concrete to rust, which then caused the concrete to crack and break off. *Id*. The plaintiffs sued Toppino for breach of common law implied warranty, products liability, negligence and violation of the building code. *Id*. The district court barred the action under the economic loss doctrine, holding that because no person was injured and no other property damaged, the plaintiffs had no cause of action against Toppino in tort. *Id*.

¶ 25. The plaintiffs argued on appeal that the concrete had damaged "other property" because the individual components and items of building material, not the homes themselves, are the products they purchased. *Id*. at 1247. In addressing the "other property" exception, the Florida Supreme Court held that in order to determine the character of the plaintiffs' loss and thus the appropriate remedy, "one must look to the product purchased by the plaintiff, not the product sold by the defendant." *Id*.

> Generally, house buyers have little or no interest in how or where the individual components of a house are obtained. They are content to let the builder produce the finished product, i.e., a house. These homeowners bought finished products—dwellings—not the individual components of those dwellings. They bargained

case does not involve any material inherently dangerous to the health and safety of humans, *Northridge* does not apply. *Wausau Tile*, 226 Wis. 2d at 265.

for the finished products, not their various components. The concrete became an integral part of the finished product and, thus, did not injure "other" property.

*Id.*[6]

¶ 26. We adopt the reasoning of *Casa Clara* as the law in Wisconsin. We hold that the economic loss doctrine applies to building construction defects when, as here, the defective product is a component part of an integrated structure or finished product. The law of *Casa Clara* is consistent with Wisconsin precedent addressing component parts that cause damage to an integrated product, which results in only economic loss.

¶ 27. Here, as in *Casa Clara*, the homeowners purchased a finished product, their condominium units, the quality of which fell below expectations. While the Association argues that the defective windows caused damage to interior and exterior walls and casements, these are but other component parts in a finished product. Because of the integral relationship between

---

[6] The reasoning of *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244 (Fla. 1993), has been cited in a number of jurisdictions. *See, e.g., Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 271 (Me. 1995) (holding that tort claim for water damage caused to condominium units by defective windows barred by economic loss doctrine); *In re Masonite Corp*, 21 F. Supp. 2d 593, 602–03 (E.D. La. 1998) (holding that tort claim against siding manufacturer for water damage and infestation caused defective siding barred by economic loss doctrine); *Calloway v. City of Reno*, 993 P.2d 1259, 1266–67 (Nev. 2000) (holding that economic loss doctrine applies to construction defect cases). We note, however, that the *Casa Clara* holding was called into doubt by a later Florida case, *Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999).

the windows, the casements and the surrounding walls, the windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured. *See Midwhey*, 157 Wis. 2d at 591; *Cincinnati Ins.*, 224 Wis. 2d at 463. Although the condominium units may have suffered incidental damage as a result of the failed windows, this does not take a commercial dispute outside the economic loss doctrine. *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 575–76 (7th Cir. 1990).

¶ 28. Jeld-Wen's warranty indicates the bargained for remedies in the event the windows fail to perform as expected. Presumably, the purchasers and Jeld-Wen negotiated the terms of this agreement. To allow the Association to recover in tort what are essentially contract damages as a result of a product's failure to perform as expected, would provide the Association with an end run around the terms of the parties' contract. *State Farm Mutual Insurance Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 336–37, 592 N.W.2d 201 (1999) ("Allowing tort recovery for economic loss would allow an end run around the bargain and provide recovery for which the parties neither bargained nor expected.").

## CONCLUSION

¶ 29. We conclude, as did the circuit court, that Jeld-Wen is entitled to summary judgment as a matter of law. The Association's claim for damages to "other property" is barred by the economic loss doctrine.

*By the Court.*—Judgment affirmed.