Filed 02/26/24

VERMONT SUPERIOR COURT
Grand Isle Unit
PO Box 7
North Hero VT 05474
802-372-8350
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-02388

---

Marie Couldwell et al v. Mountain View Custom Homes LLC et al

---

## DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Marie and William Couldwell sue for damage to their cottage, resulting from subsidence of the foundation. Their Complaint names several individuals or entities involved in the construction. One of those individuals, Defendant Paul Burleson, moves for summary judgment, arguing that the economic loss doctrine bars any recovery against him. The court grants the motion.

## BACKGROUND

Ordinarily, the standards applicable to a motion for summary judgment are so familiar as not to bear repetition. Here, however, each party has made factual submissions to which the other has not properly responded. Thus, at the risk of belaboring the obvious, the court sets forth the standards.

Under Rule 56, the initial burden falls on the moving party to show an absence of dispute of material fact. *E.g.*, *Couture v. Trainer*, 2017 VT 73, ¶ 9, 205 Vt. 319 (citing V.R.C.P. 56(a)). When the moving party has made that showing, the burden shifts to the non-moving party; that party may not rest on mere allegations, but must come forward with evidence that raises a dispute as to the facts in issue. *E.g.*, *Clayton v. Unsworth*, 2010 VT 84, ¶ 16, 188 Vt. 432 (citing *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262, 266 (1981) and *Alpstetten Ass'n, Inc. v. Kelly*, 137 Vt. 508, 514 (1979)). Where that party bears the burden of proof on an issue, if fairly challenged by the motion papers, it must come forward with evidence sufficient to meet its burden of proof on that issue. *E.g.*, *Burgess v. Lamoille Housing P'Ship*, 2016 VT 31, ¶ 17, 201 Vt. 450 (citing *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989)). The evidence, on either side, must be admissible. *See* V.R.C.P. 56(c)(6); *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112 ("Once a claim is challenged by a properly supported motion for summary judgment, the nonmoving party . . . must come forward with admissible evidence to raise a dispute regarding the facts."). The court must give the non-moving party the benefit of all reasonable doubts and inferences. *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 476 (1998). Thus, "[i]n determining the existence of genuine issues of material fact, courts must accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Gates v.*

*Mack Molding Co.*, 2022 VT 24, ¶ 13, 216 Vt. 379 (internal quotation marks omitted) (citing *Robertson v. Mylan Lab'ys*, Inc., 2004 VT 15, ¶ 15, 176 Vt. 356).

Here, Mr. Burleson properly set forth the facts he deemed material, supporting his assertions with references to the record. *See* V.R.C.P. 56(c)(1). In response, the Couldwells also complied with their obligations, providing support in the record for any claimed disputes. *See* V.R.C.P. 56(c)(2). They then went further, asserting additional facts and supporting them with record references. *See id.* In response, however, Mr. Burleson asserted bald denials to many of the Couldwells' assertions, with no record references. He also submitted a supplemental statement of undisputed facts, again properly supported by references to the record. The Couldwells failed to respond. The court thus deems those facts asserted by one party but not properly controverted by the other as undisputed for the purposes of this motion. *See* V.R.C.P. 56(e)(2).

Viewed through this lens, the following material facts emerge as undisputed. The Couldwells contracted with Mountain View Homes to design a prefabricated house and foundation. At Mountain View's recommendation, they hired J Mabb Construction, LLC ("Mabb") to act as the general contractor for the project. Mabb, in turn, hired two subcontractors: Pigeon Brothers Excavating, LC, to perform site work including excavation and placement of fill around and under the concrete foundation and concrete slab; and Mr. Burleson, to install footings, frost wall, and concrete slab. Mabb did not hire Mr. Burleson to design the footings, frost wall and slab; nor did it hire Mr. Burleson to evaluate the subbase or soil conditions. Rather, Mr. Burleson's sole undertaking was to install an 8-inch footing and 4-foot frost wall in the hole that had been prepared and staked out by Pigeon Brothers, and then return to pour a slab on top of crushed stone that had been placed by Pigeon Brothers.

Before starting framing, Mabb used a laser to check whether the foundation and slab were level and found they were out of level by half an inch between all four corners. Later, Mr. Burleson checked the slab and found it to be 4 ½ inches lower in one corner than the diagonally opposite corner. Mr. Burleson told Mabb about this measurement, and his belief that the foundation was sinking. Evidently, Mabb then proceeded to construct the house.

After the house was complete, the Couldwells hired an engineering firm that inspected the house and measured the interior concrete floor. Those measurements confirmed that the floor had settled and was out of level by approximately six inches. The Couldwells then hired a second engineering firm to assess the cause of the foundation and slab settlement. That firm concluded that

peat and other organic material had been left below the foundation, and that the presence of this organic material was causing the foundation and slab to settle.

This suit followed. The Couldwells asserted contract claims against Mountain View and Mabb, and negligence claims against all Defendants, including Mr. Burleson. They claimed that "Defendants' breach of the standard of care has resulted in damage not only to the structure itself, but also to interior fixtures and furnishings." Their Statement of Supplemental Material Facts establishes that this damage requires "repairs to the framed house structure, interior finishes, exterior finishes, fixtures, utilities, the electrical system, and the mechanical system."  Repairs will also require excavation of preexisting underground utilities and connection to a new sewer line. Notably, however, the Couldwells have identified no damage other than to the house and its component parts.

## ANALYSIS

On these facts, the application of the economic loss rule is fairly obvious. The Couldwells' claims against Mr. Burleson all sound in tort—as they must, because there is no contractual relationship. The economic loss rule, however, generally "prohibits recovery in tort for purely economic losses." *Sutton v. Vermont Reg'l Ctr.,* 2019 VT 71A, ¶ 30, 212 Vt. 612. The rationale behind this rule is twofold: (1) "[e]conomic losses proliferate more easily than losses of other kinds, leading to indeterminate and disproportionate liability"; and (2) "[r]isks of economic loss tend to be especially well suited to allocation by contract." *Id.* ¶ 32 (internal quotation marks and citations omitted). Thus, the rule " 'maintain[s] a distinction between contract and tort law' by 'prohibit[ing] recovery in tort for purely economic losses.' " *Walsh v. Cluba*, 2015 VT 2, ¶ 27, 198 Vt. 453 (quoting *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc*., 2012 VT 80, ¶ 10); *see also Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558 (2000) (mem.) ("[N]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss.") (internal quotation marks and citation omitted).

"[I]njury to . . . property that is the subject of a contract is generally considered a disappointed economic expectation for which relief lies in contract rather than tort law." *Walsh*, 2015 VT 2, ¶ 28. Thus, with respect to damage to such property, "the economic-loss rule generally applies to bar tort claims." *Id.* That is plainly the case here. The Couldwells seek damages for harm to the property that was the subject of their contract with Mountain View and Mabb. Such lost economic expectation falls squarely within the class of relief precluded by the economic loss rule. *See Long Trail*, 2012 VT 80, ¶

10 (economic loss rule barred condominium association's claim against general contractor, alleging negligent construction of condo complex).

To avoid the fairly obvious application of the economic loss rule to their claims, the Couldwells raise several arguments. They argue first that the rule does not apply because there was no contract between them and Burleson. Next, they assert that Mr. Burleson undertook design responsibilities outside the scope of his contractual obligations, giving rise to a duty of care independent of any contractual obligations. Finally, they argue that the "other property" exception to the economic loss rule applies here. None of these arguments withstands scrutiny.

The first argument suffers from a misreading of the cases on which it relies. To put it bluntly, none of the cases the Couldwells cite supports the proposition that the economic rule applies only where there is a contract between the parties. To the contrary, in *Long Trail*, the Court observed, "[p]rivity, or lack thereof, is not the determining factor, nor are we persuaded that the rule's application turns on whether the parties had the opportunity to allocate risks." *Id.* ¶ 18. Thus, it expressly held, "we reject the . . . assertion that contractual privity must be present before the economic loss rule applies." *Id.* ¶ 18. This holding applies with full force here.

The second argument suffers from a similar infirmity. Here, the Couldwells cherry-pick one sentence from *Long Trail* and conflate it into an entire doctrine unknown in Vermont law. Contrary to their assertion, the *Long Trail* court did not "establish" that "[t]he underlying analysis turns on whether there is a duty of care independent of any contractual obligations." *Id.*, ¶ 14. Rather, it observed that it had "explained" that concept in *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316 (2001). *Id.* Reading that explanation in context, it is clear that the "duty of care independent of any contractual obligations" to which the *Long Trail* and *Springfield Hydroelectric* courts referred is one that arises from a "special relationship" between a client and a provider of a specialized professional service. *See Long Trail*, 2012 VT 80, ¶¶ 14–23; *Springfield Hydroelectric*, 172 Vt. at 316–18. Here, as in those cases, there is no such relationship.

Because of their exclusive focus on the "independent duty" language, the Couldwells make no attempt to demonstrate that there was a "special relationship" between them and Mr. Burleson. Instead, they assert blithely that "Burleson independently undertook design responsibility for which he was not hired to provide." Pls' Memo. in Opp., p. 8. This "design responsibility," they say, involved evaluating the soil and subbase and concluding that the depth of the excavation was about four feet, that the crushed stone provided a good base under the footings and slab, and that the backfilling was proper.' " *Id.* at 9. The first problem with this assertion is that, even indulging all reasonable inferences in the

Couldwells' favor, it falls far short of establishing a design undertaking. Moreover, it is at war with several other facts the Couldwell assert as undisputed: that Mr. Burleson was not hired to design anything; that he was not hired to evaluate subbase or soil conditions; that he has no experience with evaluating soil conditions for stability to support a foundation; that he never really knows whether a site preparation provides a good solid base for his work; and that he does nothing besides a visual observation of the soils to determine whether they provide a solid base for a foundation. Pls' Statement of Suppl. Material Facts, ¶¶ 16–17, 26–28. On these facts, the inference that he undertook some design responsibility with respect to subsurface conditions is far from reasonable.

The second problem with this argument is that ignores the clear teachings of *EBWS, LLC v. Britly Corp.*, 2007 VT 37, 181 Vt. 513. There, the Court observed, "[p]urely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contract obligations." *Id.* ¶ 31 (citing *Springfield Hydroelectric*, 172 Vt. at 316). The Court went on to observe, "the key is not whether one is licensed in a particular field, . . . ; rather, the determining factor is the type of relationship created between the parties." *Id.* Here, of course, there was no relationship. Thus, whether or not Mr. Burleson undertook design responsibilities, there was no "special relationship," and hence, no "duty of care independent of any contractual obligations."

The third argument—that the "other property" exception to the economic loss rule applies here—fares no better. The "other property" exception to the economic loss rule allows recovery in tort when a defective product causes harm to property other than the defective product itself. *See, e.g.,* Dobbs' Law of Torts § 449 (2d ed.). Defining "other property" may be challenging. Generally, though, when a component is part of an integrated whole, and a defect in the component causes harm to the whole, the harm is not considered harm to "other property," and the economic loss rule applies. *Id.*

The Couldwells' opening salvo in their argument on this point is a bit of a *non sequitur*; they assert that " 'purely economic loss generally requires privity of contract' which does not exist here." How this assertion bears on applicability of the "other property" exception does not appear. Moreover, the assertion depends on a selective quotation that turns the meaning of the sentence from which it is drawn on his head. The quoted language comes from *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, 179 Vt. 250. The full sentence reads, "In short, liability for purely economic loss generally requires privity between the parties." *Id.*, ¶ 7. While the Couldwells omitted only four words, two of those words completely change the meaning. As the Couldwells properly note, privity does not exist here. Thus, liability for economic loss is "generally" precluded.

The second part of the Couldwells' argument on this point finds at least some support in caselaw from other jurisdictions. The greater—and in the court's view, the better reasoned—weight of authority, however, holds that where the "other property" that is damaged consists of portions of an integrated whole product of which the defendant's work was a component part, the exception does not apply. *See, e.g., East River Steamship Corp., v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) (exception did not apply when ships' engines were defective, causing harms to closely related parts as well as to functioning of the ships); *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1001 (Idaho 2005) *abrogated on other grounds by BrunoBuilt, Inc. v. Briggs Eng'g, Inc.,* 525 P.3d 1122, 1124 (Idaho 2023) (homeowners' negligence claim for damages to house caused by settling foundation was barred by economic loss rule where homeowners bought house and lot as an "integrated whole"); *Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 651 N.W.2d 738, 746 (Wis. 2002) ("other property" exception to economic loss doctrine did not apply to damaged casements and walls surrounding defective windows; "[b]ecause of the integral relationship between the windows, the casements and the surrounding walls, the windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured"); *id.* at 746 n.6 (citing other cases declining to apply "other property" exception where damaged items were but parts of an "integrated whole" product); *Indianapolis-Marion Cty. Pub. Libr. v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 732 (Ind. 2010) (where plaintiff purchased complete refurbishing of library facility, alleged negligent design and inspection by subcontractors as to accompanying parking garage which was to serve as library's foundation was "an integral part of the entire library construction project, not independent from it"); *id.* at 732 n. 9 (listing cases applying economic loss rule). While our Supreme Court has yet to address the issue, as far as the court can tell, other Vermont trial courts are unanimous in their accord. *See Miller v. Cross Consulting Eng'rs*, No. 966-10-17 Cncv, slip copy at 3–4 (Vt. Super. Ct. Oct. 12, 2021) (Hoar, J.); *Town of Fairlee v. Forcier Aldrich & Associates*, No. 211-12-17 Oecv, 2019 WL 2718682, at *7 (Vt. Super. Ct. Jan. 13, 2019) (Harris, J.) (damaged components of water storage tank formed "integrated unit or product" such that "other property" exception did not apply); *Treetop at Stratton Condo. Ass'n, Inc v. Treetop Dev. Co., LLC*, No. 147-3-09 Wmcv, 2011 WL 8472969, slip copy at 4–5 (Vt. Super. Ct. Feb. 04, 2011) (Wesley, J.) ("the 'product' that the Association members purchased consisted of the entire condominium structures and any corresponding common areas, such that defects to one component of the product cannot fall within the 'other property' exception to the economic loss rule").

Here, all of the damage was to parts of the "integrated whole"—the Couldwells' house. As noted above, their Complaint alleged "damage not only to the structure itself, but also to interior fixtures and furnishings." Their Statement of Supplemental Material Facts establishes that this damage requires "repairs to the framed house structure, interior finishes, exterior finishes, fixtures, utilities, the electrical system, and the mechanical system." Evidently, these repairs will also require excavation of preexisting underground utilities and connection to a new sewer line. Nowhere, however, do they provide any evidence of damage to those utilities, or to anything else outside the building envelope. In short, they have failed to show that they have sustained physical damage other than to the house itself. Thus, the "other property" exception does not save their claims.

## ORDER

The court grants Mr. Burleson's motion for summary judgment. The clerk will enter judgment for Mr. Burleson on all claims against him. This matter should now be ready for trial. The clerk will set the case for a pretrial conference.


Electronically signed pursuant to V.R.E.F. 9(d): 2/23/2024 10:43 AM

_____
Samuel Hoar, Jr.
Superior Court Judge