GENERAL CASUALTY COMPANY OF WISCONSIN, Charles Willard and Kay Willard, Plaintiffs-Appellants,

v.

FORD MOTOR COMPANY, Defendant-Respondent.

Supreme Court

*No. 97–3607. Submitted on briefs November 12, 1998.—Decided May 4, 1999.*

(Also reported in 592 N.W.2d 198.)

For the plaintiffs-appellants there were briefs by *Stephen E. Ehlke, David J. Pliner* and *Bell, Metzner, Gierhart & Moore, S.C.*, Madison.

For the defendant-respondent there was a brief by *Kristin Houtari* and *Winner, Wixson & Pernitz*, Madison and *John T. Coleman, Virginia C. Leete* and *Donohue, Brown, Mathewson & Smyth*, Chicago, IL.

¶ 1.   WILLIAM A. BABLITCH, J.   In Wisconsin, the economic loss doctrine bars tort recovery for economic loss suffered by commercial entities. This case requires that we determine whether the economic loss doctrine also applies to consumer transactions, even when a product is damaged under "sudden and calamitous" conditions.   General Casualty Insurance Company of Wisconsin (General Casualty) and Charles and Kay Willard (the Willards) (collectively "plaintiffs"), request that this court reverse the circuit court's order granting Ford Motor Company's (Ford) motion to dismiss plaintiffs' subrogation action for damages arising from an economic loss pursuant to theories of negligence, strict liability and breach of express and implied warranties of merchantability. The circuit court reasoned that the tort claims were barred by the

economic loss doctrine, and the contract claims were barred by the statute of limitations. Because we conclude that the same policies that justify applying the economic loss doctrine to commercial transactions apply with equal force to consumer transactions, even when the economic loss is caused by a "sudden and calamitous" condition, we hold that the economic loss doctrine applies to consumer transactions and bars the plaintiffs' tort claims for purely economic loss. Therefore, we affirm the order of the circuit court granting Ford's motion to dismiss.

¶ 2.  In May 1996 the Willards' 1989 Lincoln Town Car, a vehicle designed and manufactured by Ford, burst into flames as it was sitting in front of their home. The fire apparently started in the steering column. The Willards' insurer, General Casualty, paid the Willards $1880.97 for the fire damage to their car, pursuant to their contract of insurance.

¶ 3.  On July 2, 1997, General Casualty commenced this subrogation action against Ford in small claims court, seeking to recover the money it had paid to the Willards. The Willards joined the suit to recover the $50 deductible they had paid. Together, General Casualty and the Willards sued Ford under theories of negligence, strict liability and breach of express and implied warranties of merchantability. They alleged damage only to the vehicle and did not allege personal injury or damage to any other property.

¶ 4.  In its answer, Ford asserted that the plaintiffs' claims for recovery under tort theories were barred by the economic loss doctrine and that their contract claims were barred by the statute of limitations. Ford also moved to dismiss the action pursuant

to Wis. Stat. § 802.06(2)(a)6 (1995–96)[1] for failure to state a claim upon which relief can be granted. The Columbia County Circuit Court, the Honorable Daniel S. George, accepted Ford's arguments and granted its motion to dismiss.

¶ 5.  The plaintiffs appealed the circuit court order granting Ford's motion to dismiss. Ford petitioned to bypass the court of appeals pursuant to Wis. Stat. § (Rule) 809.60 and the plaintiffs joined Ford's petition. This court granted the petition.

¶ 6.  The issue presented by this case is whether the economic loss doctrine applies to consumer transactions to bar tort recovery for purely economic loss.[2]

¶ 7.  The question of whether the economic loss doctrine applies to consumer transactions, given the undisputed facts presented by this case, is a question of law that this court reviews de novo. *Sunnyslope Grading v. Miller, Bradford & Risberg, Inc.,* 148 Wis. 2d 910, 915, 437 N.W.2d 213 (1989) (citing *First Nat. Leasing Corp. v. Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977)).

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

[2] The plaintiffs' notice of appeal states that it is appealing from the order granting Ford Motor Company's motion to dismiss entered on October 13, 1997. This order dismissed both plaintiffs' tort and breach of warranty claims. However, plaintiffs do not argue before this court that the circuit court erred in granting Ford's motion to dismiss its breach of warranty claims as barred by the statute of limitations. Therefore, we do not address plaintiffs breach of warranty claims or whether the circuit court properly dismissed this claim as barred by the statute of limitations.

¶ 8. We considered the same issue presented by this case in *State Farm Mutual Automobile Ins. Co. v. Ford Motor Company*, 225 Wis. 2d 305, 592 N.W.2d 29 (1999), decided this same day. For the same reasons set forth in *State Farm*, we conclude that the economic loss doctrine applies to consumer transactions and therefore, the plaintiffs' tort claims for purely economic loss are barred. Accordingly, we affirm the circuit court order dismissing plaintiffs' complaint for failure to state a claim.

¶ 9. General Casualty's arguments to not apply the economic loss doctrine to consumer transactions mirror the arguments made by State Farm in the companion case, *State Farm* 225 Wis. 2d 305. General Casualty makes an additional argument that tort remedies are appropriate because the vehicle damage occurred under "sudden and calamitous" conditions.

¶ 10. General Casualty relies primarily on *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3rd Cir. 1981) and *Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977), cited within *Pennsylvania Glass*, to support its argument that tort remedies are appropriate in this case because the vehicle damage occurred under "sudden and calamitous" conditions. The court in *Pennsylvania Glass* determined that "deterioration and other defects of poor quality should be considered economic loss, whereas 'sudden and calamitous damage will almost always result in direct property damage' recoverable in tort." *Pennsylvania Glass*, 652 F.2d at 1172 (quoting *Cloud*, 563 P.2d at 251).

¶ 11. The *Pennsylvania Glass* court held that the guiding factors to determine whether tort or contract law should apply are "the nature of the defect and the type of risk it poses . . . ." 652 F.2d at 1174. In that case,

the damage to the product resulted from a fire, "a sudden and highly dangerous occurrence. . . .[T]he alleged defect. . .constitutes a safety hazard that posed a serious risk of harm to people and property. Thus, the complaint. . .appears to fall within the policy of tort law that the manufacturer should bear the risk of hazardous products." *Id.* at 1174–75. We are not persuaded by the holding or rationale of *Pennsylvania Glass*.

¶ 12.    The United States Supreme Court rejected the analysis of *Pennsylvania Glass* and other cases like it which allow tort recovery when "the defective product creates a situation potentially dangerous to persons or other property. . . ." *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 870 (1986) (citing *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.* 623 P.2d 324, 329 (Alaska 1981)). The Court stated that this "intermediate" position was "unsatisfactory" and "too indeterminate to enable manufacturers easily to structure their business behavior." *East River*, 476 U.S. at 870. Whether damage to the product itself occurs through gradual deterioration or by some sudden and calamitous event, the resulting loss is purely economic. *Id.* Even if the loss is caused by a sudden and calamitous event, the economic loss "is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.* (citing E. Farnsworth, Contracts § 12.8, pp. 839–840 (1982)). "*East River* eliminates the conceptually difficult problem of distinguishing damage caused by an accident to the product itself from that caused by ordinary wear and tear." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 54 (Ill. 1997).

¶ 13.    We agree with the rationale of the United States Supreme Court in rejecting the "sudden and

calamitous" basis for not applying the economic loss doctrine where the damage is only to the defective product. The Court rejected the distinction between disappointed users of a defective product and endangered users. *East River*, 476 U.S. at 870. Regardless of whether the loss occurs by gradual deterioration or a sudden and calamitous event, if there is no physical injury to persons or other property, the resulting loss is purely economic—"traditionally the core concern of contract law." *Id.*

¶ 14.   In addition, *Pennsylvania Glass* no longer has any precedential value in either the Third Circuit or in Pennsylvania. After the United States Supreme Court decision in *East River*, the United States Court of Appeals for the Third Circuit acknowledged that decision and refused to allow tort damages for a purely economic loss even though the damage resulted from a fire—a sudden and calamitous event. *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 119 (3rd Cir. 1987). The Pennsylvania Superior Court also adopted the holding of *East River*. *See REM Coal Co., Inc. v. Clark Equipment Co.*, 563 A.2d 128, 132 (Pa. Super. Ct. 1989). Accordingly, *Pennsylvania Glass* is no longer good law in either the Third Circuit or in Pennsylvania. A case with no value in its own jurisdiction is not the proper foundation on which this court should build an exception to the economic loss doctrine.

¶ 15.   We are also persuaded by the fact that many of the jurisdictions that have considered a "sudden and calamitous" exception to the economic loss doctrine have rejected it. *See Airport Rent-a-Car, Inc. v. Prevost Car, Inc.*, 788 F. Supp. 1203, 1205–06 (S.D. Fla. 1992) (applying Florida law); *Sharp Bros. v. American Hoist & Derrick Co.*, 703 S.W.2d 901 (Mo. 1986); *Utah Intern. v. Caterpillar Tractor*, 775 P.2d 741 (N.M. Ct.

App. 1989), cert. denied, 772 P.2d 884 (1989); *Cooperative Power v. Westinghouse Elec.*, 493 N.W.2d 661 (N.D. 1992); *REM Coal Co.*, 563 A.2d at 128; *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641 (Wyo. 1989).

¶ 16.  Safety concerns are adequately protected by holding manufacturers liable for personal injury and damage to other property. Christopher Scott D'Angelo, *The Economic Loss Doctrine: Saving Contract Warranty Law from Drowning in a Sea of Torts*, 26 U. Toledo L. Rev. 591, 602 (1995). " 'Since any product put into the stream of commerce has the theoretical potential to injure persons and property, the incentive to provide safe products is always present.' " *Id.* (quoting *Bocre Leasing Corp. v. General Motors Corp.*, 84 N.Y.2d 685, 691 (1995)). The "sudden and calamitous" exception to the economic loss doctrine is counter to the majority rule and "destroys the certainty and risk allocation sought to be established by the U.C.C. and contract law, and the exception will cause the 'law of contract to drown in a sea of tort.' " 26 U. Toledo L. Rev. at 607 (quoting *East River*, 476 U.S. at 866).

¶ 17.  In the present case, damage to the Willards' vehicle could have occurred through gradual deterioration and internal breakage. Or the damage could have occurred as a result of sudden and calamitous conditions. Regardless of the origin of the damage, the loss was purely economic. No person or other property was damaged. The Willards lost the benefit of their bargain to purchase a vehicle that meets certain standards of merchantability. Like the Court in *East River*, we determine that this is the core concern of contract law and damages for purely economic loss can only be pursued through contract theories of law.

¶ 18.   In sum, for the reasons set forth herein and in *State Farm*, we hold that the economic loss doctrine applies to consumer transactions and bars the plaintiffs' tort claims for purely economic loss. Accordingly, we affirm the order of the circuit court granting Ford's motion to dismiss.

*By the Court.*—The order of the circuit court is affirmed.

¶ 19.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). I dissent for the reasons set forth in my dissent in *State Farm Mutual Automobile Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 592 N.W.2d 201 (1999), of even date.

¶ 20.   I am authorized to state that JUSTICE ANN WALSH BRADLEY joins this dissent.