TRINITY LUTHERAN CHURCH and
Guide One Mutual Insurance Company,
Plaintiffs-Respondents-Cross-Appellants,

v.

DORSCHNER EXCAVATING, INC.,
Defendant-Third-Party Plaintiff-Respondent-
Cross-Respondent,

v.

EDWARD RADTKE & SONS, INC.,
Baumgart Excavating, Inc., ABC Insurance
Company, DEF Insurance Company and GHI
Insurance Company, Third-PartyDefendants,

OUDENHOVEN CONSTRUCTION, INC.,
Third-Party Defendant-Appellant.

Court of Appeals

*No. 2004AP785. Submitted on briefs December 16, 2004.
—Decided January 12, 2006.*

2006 WI App 22

(Also reported in 710 N.W.2d 680.)

254

On behalf of the third-party defendant-appellant, the cause was submitted on the briefs of *John H. Schroth* of *Kasdorf, Lewis & Swietlik, S.C.*, Green Bay.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Frank A. Dvorak* of *Foley & Mansfield, P.L.L.P.*, Minneapolis, MN.

On behalf of the defendant-third-party plaintiff-respondent-cross-respondent, the cause was submitted on the briefs of *John P. Runde* of *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Wausau.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. Oudenhoven Construction, Inc. (OCI), a company hired by Trinity Lutheran Church to coordinate the construction of an addition to Trinity's church building, appeals a judgment awarding damages to Trinity for a mishap that occurred during the construction project. OCI argues that the economic loss doctrine bars the negligence claims asserted against it by Trinity and by Dorschner Excavating, Inc.,

a company separately hired by Trinity to perform excavation work for the project. OCI also argues that expert testimony was necessary to establish whether OCI's conduct was negligent and caused damage to Trinity. Finally, OCI contends the evidence presented at trial was insufficient to permit the jury to find it negligent.

¶ 2. Because no contractual relationship existed between Dorschner and OCI, we conclude Dorschner's negligence claim against OCI for contribution is not barred by the economic loss doctrine. Trinity and OCI entered into a contract regarding the construction project, but their contract is not in the record. Accordingly, we must treat the missing contract as supporting the trial court's conclusion that its predominant purpose was OCI's provision of construction coordination services. Accordingly, we conclude the economic loss doctrine also does not bar Trinity's recovery from OCI.

¶ 3. We also conclude that expert testimony was not required to establish that OCI's conduct was negligent and contributed to Trinity's loss. Finally, we conclude that the record contains sufficient evidence to support the jury's finding that OCI was negligent in discharging its construction coordination duties.

¶ 4. Trinity cross-appeals the trial court's denial of its postverdict motion to change verdict answers or for judgment notwithstanding the verdict, in which it sought to recover against Dorschner on a contractual theory as well as in tort. We accept Dorschner's unrefuted assertion that our rejection of OCI's challenges to the appealed judgment renders Trinity's cross-appeal moot. Accordingly, we affirm the judgment before us in all respects.

## BACKGROUND

¶ 5. Trinity Lutheran Church hired several contractors to build a new addition to its church. After the project was completed, the church board and pastor came to the church for a meeting, where they were met by water pouring out of the doors of the church. The cause of the flooding was determined to be a crack in the lateral supplying water to the church. Trinity and its property insurer, Guide One Mutual Insurance Company, commenced this action to recover their respective losses stemming from the water damage to the church.[1]

¶ 6. The relationships between the parties involved in this construction project are as follows. Trinity hired OCI to coordinate construction of the addition to its church. The contract between the parties specified that this would be a "design-build" project, meaning that OCI would coordinate the work of the various contractors on the project but would not be responsible for supervising them. OCI entered into a series of subcontracts, including one with Edward Radtke & Sons, Inc., for plumbing work. Radtke, in turn, hired Baumgart Excavating, Inc., to install a water main and sanitary sewer piping. In a separate contract not involving OCI, Trinity contracted with Dorschner Excavating, Inc., to excavate for the project's footings.

¶ 7. Baumgart excavated and installed a lateral water pipe from the city water main to the church. The next day, Baumgart performed a water pressure test on the water lateral and obtained a satisfactory result. The test showed no loss of pressure, confirming the absence of loose connections or cracks in the water pipe. OCI

---

[1] In the remainder of this opinion, we refer to Trinity Lutheran Church and Guide One Mutual Insurance Company collectively as "Trinity."

instructed Baumgart as to where the water lateral should enter the church building but did not supervise Baumgart in the installation or testing of the water pipe.

¶ 8. After Baumgart finished its work, Dorschner excavated for the project footings. Dorschner knew that it was excavating above the water pipe because the trench where the ground had previously been disturbed by Baumgart to lay the water lateral was visible on the surface. Dorschner used a backhoe to excavate the footings above the water lateral, and it then employed a prod rod and hand shovels as it got closer to the water lateral pipe.

¶ 9. Only Dorschner used a backhoe in the area of the water lateral after Baumgart had conducted the pressure test on the newly installed lateral. The pipe was not tested again after Dorschner finished its work. Water from the city water main to the church was not turned on while Dorschner did its excavation work, and it remained off until shortly before the church board meeting when the flooding was discovered.

¶ 10. After the flooding, the water lateral was re-excavated. A large crack was discovered in the lateral in the vicinity of where Dorschner excavated for the footings. Trinity's expert opined that the water pipe cracked when the teeth of a backhoe struck it. It was established at trial that only Dorschner and Baumgart had used backhoes in the area where the water lateral pipe was located.

¶ 11. Trinity and its insurer sued Dorschner, alleging claims for breach of contract and negligence. Dorschner, in turn, filed a third-party complaint joining Radtke, Baumgart and OCI, asserting that their negligence had caused Trinity's loss. Trinity asserted no

direct claims against Baumgart or OCI until after the jury verdict, when the trial court permitted Trinity to amend its complaint.

¶ 12. The claims were tried to a jury. At the close of Dorschner's case, OCI, Radtke and Baumgart moved for a directed verdict due to insufficient evidence. The parties stipulated to the dismissal of the claim against Radtke because it had been directly responsible for only interior plumbing work. The trial court denied OCI's and Baumgart's motions. The parties stipulated that Trinity and its insurer suffered damages in the amount of $195,596. The jury determined that Dorschner, Baumgart and OCI were all causally negligent, and it allocated causal negligence as follows: Dorschner, 20%; OCI, 60%; and Baumgart 20%. The jury also determined that Dorschner did not breach its contract with Trinity.

¶ 13. OCI filed postverdict motions in which it sought: (1) to change the jury's answers finding it negligent and its negligence causal from "yes" to "no"; (2) to change the jury's answer apportioning "60%" of the causal negligence against OCI to "0%"; and (3) a new trial on the grounds that the "verdict is perverse and against the interest of justice." The trial court denied all of OCI's motions.

¶ 14. Trinity moved postverdict for leave to amend its pleadings to include negligence claims against OCI and Baumgart, which the trial court granted. Trinity also moved for judgment notwithstanding the verdict, or alternatively to change verdict answers, such that its recovery against Dorschner would rest not only on Dorschner's causal negligence but also on Dorschner's alleged breach of contract. The court denied this motion.

¶ 15. The court entered judgment in favor of Trinity as follows: against Dorschner for $39,119.20 (20% of the stipulated damages), plus interest, costs and disbursements; against Baumgart for $39,119.20, plus interest; and against OCI "severally" for $117,357.58 (60% of the stipulated damages) and "jointly" for $195,595.98 (the stipulated damages), plus interest. OCI appeals the judgment and Trinity cross-appeals the denial of its postverdict motion seeking a recovery in contract as well as in tort.[2]

## ANALYSIS

### Economic Loss Doctrine: Dorschner's Claim against OCI

¶ 16. To resolve OCI's initial claim of error, we must determine whether the economic loss doctrine insulates it from the negligence claims of another contractor (Dorschner) and the customer (Trinity) who hired both of them. Whether the economic loss doctrine applies to a particular set of facts is a question of law we decide de novo, owing no deference to the trial court's conclusions. *Insurance Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI App 15, ¶ 19, 269 Wis. 2d 286, 674 N.W.2d 886, *aff'd*, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462.

¶ 17. OCI contends that the costs of remedying the church's water damage is purely an economic loss resulting from a defect in the product it supplied to

---

[2] Dorschner does not appeal the judgment against it for 20% of Trinity's damages plus costs. Although Baumgart filed postverdict motions to change the verdict answers determining that it was 20% causally negligent, which the court denied, it does not appeal or otherwise appear in this appeal.

Trinity, an addition to the church. According to OCI, it cannot therefore be held liable in tort to Dorschner and Trinity for any negligent conduct in the performance of its contractual obligations to Trinity. OCI maintains that its contract with Trinity was either purely for the provision of a product or, alternatively, primarily for that purpose, with any construction coordination services performed by it being merely incidental to providing Trinity with a new addition to the church. OCI principally relies on the recent decision in *Linden v. Cascade Stone Co.*, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, where the supreme court concluded that the general contract between an owner and general contractor, not the contract between the general and a subcontractor, governed the determination whether the subcontractor was engaged in providing a product or services. *Id.*, ¶¶ 16–17 ("Allowing the [owner] to maintain a tort claim against the subcontractors for services rendered to the general contractor would undermine the distinction between contract law and tort law that the economic loss doctrine seeks to preserve.").

¶ 18. OCI argues that, even if Trinity's contract with Dorschner was a limited one for the provisions of excavating services incident to the construction project, under *Linden*, we must evaluate the applicability of the economic loss doctrine on the basis of the broader contract between Trinity and OCI, the primary object of which, in OCI's view was the provision of a church addition to Trinity. We discuss the "primary purpose" issue below, but for present purposes (the applicability of the economic loss doctrine to Dorschner's contribution claim against OCI), the purpose or nature of Trinity's contract with OCI is irrelevant. There is no dispute that OCI and Dorschner had no contractual relationship between them. For purposes of the present

analysis, OCI and Dorschner were "strangers" to each other who happened to be working side-by-side on a common project, not parties who had had an opportunity to "allocate economic risk by contract" between them. *See id.*, ¶ 16.

¶ 19. OCI argues, however, that we should conclude that Dorschner's contribution claim against it is barred by the economic loss doctrine regardless of whether these two parties were in privity of contract with each other. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 413, 573 N.W.2d 842 (1998) ("[T]he economic loss doctrine precludes a commercial purchaser from recovering in tort from a manufacturer for solely economic losses, regardless of whether privity of contract exists between the parties."). *Daanen*, however, involved a suit by a consumer against a manufacturer, two parties who were in "vertical privity" with each other through an intermediary distributor. The contractual relationships in *Daanen*, much like the owner-contractor-subcontractor chain in *Linden*, provided a contractual relationship "between" the plaintiff and the defendant in that case. Dorschner and OCI, however, are not links in a vertical chain of contractual relationships; rather, their position with respect to each other is better analogized to that of successive spokes in a wheel, with Trinity at the hub. The contractual obligations of each ran exclusively to Trinity, not to one another.

¶ 20. It may well be that, where parties are linked to each other by contract, the economic loss doctrine may be invoked to avoid drowning contract law in "a sea of tort." *Linden*, 283 Wis. 2d 606, ¶ 7. However, when there is no contractual relationship of any kind between two parties, it is equally important to prevent an allegedly injured party from "fall[ing] between the

stools of tort and contract." *See Miller v. U.S. Steel Corp.*, 902 F.2d 573, 575 (7th Cir. 1990). Thus, we conclude that the economic loss doctrine does not bar Dorschner from obtaining a judgment for contribution from OCI on account of the latter's negligence that contributed to the loss at issue.

*Economic Loss Doctrine: Trinity's Claim against OCI*

■

¶ 21. Before analyzing whether Trinity's negligence claim against OCI is barred by the economic loss doctrine, we highlight a few key procedural facts. Trinity commenced this litigation against only Dorschner, alleging that Dorschner negligently caused Trinity's loss from the water damage to its church building.[3] Dorschner then impleaded Radtke, Baumgart and OCI, alleging that they were negligent and that their "negligence was a substantial factor in the damages allegedly sustained by Trinity." Radtke was later dismissed on stipulation of the parties, but the jury found Baumgart, OCI and Dorschner all to have been causally negligent, apportioning causal negligence in the manner we have described. The trial court subsequently allowed Trinity to allege direct claims against OCI and Baumgart, and the court entered judgment in favor of Trinity against each defendant severally for its proportionate share of damages and against OCI jointly for the entire loss. *See* WIS. STAT. 895.045(1) (2003–04).[4]

---

[3] There seems to be little dispute among the parties that Dorschner's contract with Trinity was for excavation services. Dorschner did not raise the economic loss doctrine as a defense against Trinity's claim.

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 22. The supreme court has confirmed that the economic loss doctrine applies to only contracts for products, not to contracts for services. *See, e.g., Grams v. Milk Prods. Inc.*, 2005 WI 112, 15, 283 Wis. 2d 511, 699 N.W.2d 167 (explaining that "[c]entral to our decision" not to apply the economic loss doctrine to contracts for services "was the fact that no body of law similar to the UCC applies to contracts for services").[5] In order to determine whether a given contract between two parties is one for services or products, a court is to apply the "predominant purpose" test by considering objective and subjective factors such as "the amount charged for services and the amount charged for materials, whether the purpose or 'thrust' of the contract was for goods or for services and the language used in the contract to describe the project." *Linden*, 283 Wis. 2d 606, ¶ 20. The predominant purpose test is a "totality of the circumstances" test. *Id.*, 22, 32.

¶ 23. There is no dispute that Trinity and OCI were in a contractual relationship with each other, although the nature of their contract is in dispute. According to OCI, Trinity was deprived of the benefit of its bargain because it did not receive the "product" it agreed to purchase and OCI agreed to furnish: a church addition with an intact and properly functioning water lateral. In OCI's view, when the product (the church addition) turned out to be defective (cracked water lateral), and the defect produced damage to the product and the system into which it was integrated (the church building), Trinity suffered purely an eco-

---

[5] Trinity cites two unpublished cases for the proposition that the economic loss doctrine does not apply to services contracts. We call counsel's attention to WIS. STAT. RULE 809.23(3).

nomic loss that may not be recovered in an action based in tort. *See id.*, ¶ 27 (noting that when a defective component of an "integrated system" damages "the system as a whole or other system components," the loss remains an economic one to which the economic loss doctrine applies); *General Cas. Co. v. Ford Motor Co.*, 225 Wis. 2d 353, 358, 592 N.W.2d 198 (1999) (defining economic loss as "the failure of the purchaser to receive the benefit of its bargain").

¶ 24. Trinity counters that the parties' contract was one primarily for services—the overall coordination of construction services on the project. Trinity points out that it separately and directly purchased the bulk of the materials utilized in building the addition, and that, although OCI provided some construction services itself, both OCI and Trinity separately contracted for other design and construction services. With respect to the services separately procured by Trinity, OCI was paid a fee of 10 of the amount Trinity paid to its separately procured contractors. An OCI employee testified that "Trinity went out on its own and bought $222,888 worth of services," and OCI was paid $22,289 as its fee for coordinating the work. The excavator, Dorschner, was one of these separately procured contractors. Thus, in Trinity's view, "the negligence alleged and found against OCI did not involve goods, it involved services." We agree that, on the present record, we cannot conclude otherwise.[6]

---

[6] Trinity also argues that the economic loss doctrine should not apply because there was no "defective product" involved in this case, in that the water lateral, as supplied and installed by Baumgart, was not defective. Rather, as relevant to this appeal, Trinity maintains that its claim involves the negligence of Dorschner and OCI in damaging a perfectly good water pipe after it was installed in the project, thereby causing water

¶ 25. Trinity points out that the contract between it and OCI was not introduced at trial and the testimony regarding the purpose of their contract was limited. The circuit court concluded that the contract between Trinity and OCI was predominantly one for services, those being the overall coordination of the construction project. Because the economic loss doctrine is in the nature of an affirmative defense against a claim based in tort, we conclude that it was OCI's burden to introduce its contract with Trinity and to demonstrate that its predominant purpose was to supply Trinity with a product, not with services. OCI has not met this burden on the present record, and thus, we cannot conclude that the Trinity-OCI contract was predominantly one for other than construction coordination services, as the trial court concluded. Moreover, with respect to OCI's conduct that is specifically alleged to have occasioned Trinity's loss (i.e., negligence in coordinating the excavation services supplied by Dorschner), OCI was plainly providing a service, not a product, to Trinity. Accordingly, we conclude that the economic loss doctrine does not bar Trinity's recovery of damages for OCI's negligence that contributed to Trinity's loss.

*Expert Testimony Regarding OCI's Negligence*

■

¶ 26. OCI next claims that expert testimony was necessary in order to establish that it was negligent and that its negligence caused damage to the church.

---

damage to the church building. Because we agree with Trinity's services-contract argument, we do not address whether other theories might be available to avoid the economic loss doctrine on the present facts.

Whether expert testimony is necessary to support a given claim is a question of law, which we decide de novo. *See Grace v. Grace*, 195 Wis. 2d 153, 159, 536 N.W.2d 109 (Ct. App. 1995). Expert testimony is not generally required to prove a party's negligence, *see City of Cedarburg v. Allis-Chalmers Mfg. Co.*, 33 Wis. 2d 560, 566, 148 N.W.2d 13 (1967), and requiring expert testimony before a claim can get to the jury is an extraordinary step that should be ordered "only when unusually complex or esoteric issues are before the jury," *id.* at 567. Where the presence or absence of negligence is "reasonably comprehensible to the jury," even though inferences are involved, expert testimony is not necessary. *Id.* We conclude the negligence claim against OCI is one that was "reasonably comprehensible to the jury."

¶ 27. OCI contends that the "integrity of the water lateral pipe and proper construction practices for building a church are not subjects within the realm of the ordinary experiences of mankind." While that may well be true, jurors heard expert testimony that the water lateral was fractured when it was struck by a backhoe. They did not need an expert to tell them that, in the exercise of reasonable care by those working on a construction site and those responsible for coordinating the work, a water lateral should not be struck by a backhoe. Because the pipe passed a pressurization test after it was installed by Baumgart, and because only Dorschner operated a backhoe in the area thereafter, jurors could reasonably infer that Dorschner's backhoe struck the pipe. Jurors could also reasonably conclude, without the aid of an expert, that, as the party responsible for the overall coordination of the work on the construction site, OCI should have properly marked the location of the water pipe before Dorschner was permit-

ted to excavate in the area, or that OCI should have directed that a second pressure test on the pipe be performed following the excavation work, or both.

¶ 28. We conclude that the present facts are similar to those the supreme court reviewed in *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 172 N.W.2d 427 (1969). There, the alleged negligence was a nurse's leaving of a patient "unattended and under inadequate restraint." *Id.* at 153–54. The court concluded that, even though professional standards for some aspects of nursing and hospital care would require expert testimony to explicate, the specific allegations in that case did not because they were "matters of routine care." *Id.* So, too, here. Although some aspects of building construction might well require expert testimony before a jury could properly comprehend and assess claims of negligence and causation, the claims against OCI in this case are not of that type. As in *Cramer, id.* at 154, "[o]ne does not need to be an expert to be able to determine whether" the location of a water pipe should have been marked or its integrity tested following excavation work above it.

*Sufficiency of the Evidence of OCI's Negligence*

¶ 29. OCI asserts that the evidence presented at trial was insufficient to support the jury's finding that OCI was negligent. In its appellate argument on this claim, however, OCI does not specify whether it contends the trial court should have changed the jury's answer to the question on its negligence or that the court should have granted a new trial on the issue of its negligence. In the trial court, OCI moved both to change the jury's answers to the questions on its

negligence and causation and for a new trial "on the grounds that the verdict is perverse and against the interest of justice." In its trial court brief, OCI cited "the grossly unfair and lopsided apportionment of negligence" as evidence that the verdict was perverse and unjust.

¶ 30. OCI does not renew its perversity and interest of justice arguments on appeal, and we thus construe its assertion of insufficient evidence as a claim that the trial court erred in denying its motion to change the verdict answer on the negligence question. Our interpretation of OCI's appellate argument finds additional support from the fact that OCI asks in the conclusion of its brief, not for a new trial, but that we reverse the judgment against it and remand with instructions "to dismiss the negligence claim against OCI." Finally, we note that OCI embraces the following as the proper standard for our review of its challenge to the sufficiency of the evidence of its negligence: "[T]he standard of review for a jury verdict is that it will be sustained if there is any credible evidence to support the verdict, especially if the verdict has the circuit court's approval." This is the standard applicable to a trial court's action on a motion to direct a verdict or to change verdict answers, not that applicable to a new trial request.

¶ 31. Accordingly, our duty is to search the trial record for credible evidence to sustain the jury's verdict, not for evidence to sustain a verdict that the jury could have reached but did not. *See Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 450–51, 280 N.W.2d 156 (1979). Matters relating to the credibility of witnesses and the weight given to their testimony are "left to the

judgment of the jury, and where more than one reasonable inference can be drawn from the evidence, this court must accept the inference drawn by the jury." *Id.* at 450. Applying these principles, we conclude the record contains credible evidence to support the jury's finding of negligence on OCI's part.

¶ 32. OCI was in charge of coordinating the project. The various contractors performed much of their work, not simultaneously, but in sequence, and it was thus OCI's responsibility to ensure that necessary information was communicated to and among the contractors as they performed their work. OCI's project supervisor testified that he was responsible for providing information to Dorschner as to how deep to dig the excavation for the footing and that Dorschner would have relied on him for that information. The supervisor testified that he was aware Baumgart laid the pipe too shallow, placing it within an inch of the bottom of the trench to be excavated by Dorschner. He also admitted that, as the project supervisor, he did not have "a good hold" on whether the subcontractors were following the architectural plan. Finally, the supervisor testified that, when Dorschner excavated the trench for the footings, the water pipe was exposed and could be seen in the excavation trench, but he did not go down into the trench to see if the pipe had been damaged.

¶ 33. The water lateral pipe was not tested after Dorschner completed its work, despite the fact that a test would have been performed free of charge by the City of New London. OCI's supervisor testified that he was not aware that a free test was available from the city. He reasoned that, had Dorschner struck the pipe, Dorschner would have told him because it would have been an easy and inexpensive matter to replace the pipe at that time. The supervisor further testified that he

did not believe it was OCI's responsibility to re-test the pipe after Dorschner completed its work because the pipe had already been tested after Baumgart installed it. Finally, the project architect testified that OCI had asked him to specify the location for the water lateral, and that he was not informed that the water line was in fact laid in a location different than that specified in the architectural plan, a fact that was known to OCI.

¶ 34. After reviewing the record, we agree with OCI that the jury might have concluded that Dorschner alone, or perhaps Dorschner and Baumgart together, bore the lion's share of the responsibility for what happened to the water pipe and the resulting damage to the church. As we have noted, however, OCI has abandoned its challenge to the apportionment of causal negligence. Although we think it unlikely, a jury might even have concluded on the present record that OCI's conduct was not negligent, or that it did not contribute to the loss Trinity suffered. The present jury, however, concluded otherwise, and the only question before us, as OCI itself acknowledges, is whether the record contains "any credible evidence" to support the jury's finding that OCI was negligent. We conclude that the record contains such evidence. We therefore sustain the jury's verdict.

*Trinity's Cross-Appeal*

■■■

¶ 35. Trinity cross-appeals, challenging the trial court's failure to change the jury's verdict answer finding that Dorschner did not breach its contract with Trinity. Trinity argues that "the jury's factual determination that Dorschner struck and cracked the pipe constitutes a breach of its contract as a matter of law."

Trinity asks that we remand with instructions that the verdict be changed to state that Dorschner was not only causally negligent but also that it breached its contract with Trinity. Dorschner responds that if we reject OCI's appeal and affirm the judgment as entered, "there will be no reason for this Court to decide the breach of contract question as Trinity will be able to recover the full measure of its damages from OCI."

¶ 36. In reply, Trinity does not refute or otherwise discuss Dorschner's assertion that our affirmance of the appealed judgment essentially "moots" the cross-appeal. Generally, we will deem arguments that are not refuted to be conceded. *See State v. Krueger*, 2001 WI App 76, ¶ 67, 242 Wis. 2d 793, 626 N.W.2d 83. Having affirmed the judgment in Trinity's favor permitting it to recover its stipulated damages against OCI, Dorschner and Baumgart, we fail to see (and Trinity does not tell us) what difference a change to the jury's answer on the breach of contract question would make. Accordingly, we affirm the trial court's denial of Trinity's postverdict motion on this issue.

## CONCLUSION

¶ 37. For the reasons stated above, we affirm the appealed and cross-appealed judgment in all respects. Because Dorschner has prevailed as a respondent in both the appeal and cross-appeal, it is allowed its costs against OCI and Trinity per Wis. Stat. Rule 809.25(1). Trinity has prevailed as a respondent but not as the cross-appellant, and we deny costs to Trinity. *See* 809.25(1)(a)5.

*By the Court.*—Judgment affirmed.